UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN ASHLEY BOWEN,<br><br> Petitioner,<br><br>v.<br><br>J.E. THOMAS, Warden,<br><br> Respondent. | CIVIL ACTION NO. 1:14-cv-00037<br><br>(RAMBO, J.)<br>(SAPORITO, M.J.) |

## REPORT AND RECOMMENDATION

This proceeding was initiated by a *pro se* petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241, signed and dated by the petitioner, Bryan Ashley Bowen, on December 16, 2013. (Doc. 1). At the time of filing, Bowen was incarcerated at USP Lewisburg, located in Union County, Pennsylvania.

### I. BACKGROUND

Bowen is a federal inmate serving a 308-month prison sentence for conspiracy to possess with intent to distribute cocaine, methamphetamine, and MDMA, and possession of a semi-automatic weapon in furtherance of a drug-trafficking crime. He is expected to complete his active prison term in April 2021. In his petition, Bowen challenges a disciplinary hearing officer's decision finding him guilty of misconduct and sanctioning him

with the disallowance of 27 days of good conduct time.

On the morning of September 28, 2010, while Bowen was incarcerated at USP Pollock, located in Pollock, Louisiana, a correctional officer conducting a "shake down" search of Bowen's housing unit reportedly found two bottles containing alcohol in Bowen's cell. Later that day, the correctional officer, Lieutenant M. Melton, issued an incident report, Incident Report No. 2071859, charging Bowen with "possession of intoxicants," offense code "222." He described the incident as follows:

> On Tuesday, September 28, 2010, at approximately 9:45 a.m., during an area search of Unit B-3, cell 357, two bottles containing an unknown liquid substance was recovered from inmate Bryan Bowen, Reg. No. 28585-180, assigned locker. The liquid was in a VO5 shampoo bottle and Brisk soda bottle. Also inside the locker were numerous letters and commissary receipts with inmate Bowen's name and register number on them indicating Bowen used the locker. The liquid was tested for intoxicants. The liquid smelled of intoxicants and tested .129 on the intoximeter for intoxicants.

(Doc. 2-1, at 2; Doc. 7-1, at 3). A copy of the incident report was delivered to Bowen later that afternoon by the correctional officer investigating it, Lieutenant G. MacDonald. (Doc. 2-1, at 2; Doc. 7-1, at 3–4). When given an opportunity to make a statement, Bowen reportedly told Lieutenant

MacDonald "no comment." (Doc. 7-1, at 4).[1] Bowen reportedly did not request any inmate or staff witnesses to appear on his behalf. (*Id.*).

Two days later, on September 30, 2010, the incident report was reviewed by a two-member Unit Discipline Committee ("UDC"), which referred the misconduct charge to a disciplinary hearing officer ("DHO") for further hearing. (Doc. 2-1, at 2; Doc. 7-1, at 3). In his defense, Bowen reportedly told the UDC: "It wasn't in my locker." (Doc. 2-1, at 2; Doc. 7-1, at 3). Bowen was given written notice of the upcoming disciplinary hearing and advised of his rights. (Doc. 2-1, at 3; Doc. 7-1, at 6). The UDC member who prepared the written notice, correctional counselor R. Fontnoet, marked the form to indicate that Bowen had refused to sign it, and that, when asked, Bowen had declined to request a staff representative or identify any witnesses for his disciplinary hearing. (Doc. 2-1, at 3–7; Doc. 7-1, at 6, 10–13).

On October 11, 2010, Bowen appeared before DHO Jenna Epplin-Deville for a hearing on the misconduct charge. Bowen reportedly denied the charge against him, stated that he understood his rights and was

---

[1] Page 4 of this document is a copy of the "investigation" page of the incident report, which is not given to the inmate. It has been submitted into the record by the respondent.

ready to proceed, and requested no staff representative nor witnesses. (Doc. 2-1, at 16; Doc. 7-1, at 7). Bowen denied the charged violation, stating that: "It wasn't alcohol; it was the flower smell of the shampoo." (Doc. 2-1, at 16; Doc. 7-1, at 7). In addition to the incident report and investigation, the DHO considered a photograph of the confiscated bottles. (Doc. 2-1, at 17; Doc. 7-1, at 8). The DHO ultimately found that Bowen had committed the misconduct as charged, stating:

> The DHO finds that on September 28, 2010, at or about 9:45 a.m., that you committed the prohibited act of Possessing Intoxicants, Code 222. The DHO based the finding on the eyewitness account from the reporting staff member who attested that while conducting a random cell search in the B-3 housing unit, staff searched cell 357, which was assigned to inmate BOWEN, Bryan #28585-180. The search revealed two (2) bottles (a VO5 shampoo bottle and a Brisk soda bottle) concealed in the locker. Also inside the locker were numerous letters and commissary receipts, both of which contained inmate BOWEN's name on them. The bottles contained suspect liquid with an odor of intoxicants and produced a positive reading of .129.
>
> The DHO believes that you committed the prohibited act of Code 222. The decision was based on the fact that you were found to be in possession of intoxicants. Greater weight was placed with staff's statements rather than your claim.

(Doc. 2-1, at 17; Doc. 7-1, at 8). Bowen was sanctioned with the disallowance of 27 days of good conduct time and 30 days in disciplinary

segregation; in addition, the DHO imposed a sanction of a three-month loss of commissary privileges, suspended for a period of 90 days. (Doc. 2-1, at 17; Doc. 7-1, at 8). The DHO completed her report on October 12, 2010. (Doc. 2-1, at 18; Doc. 7-1, at 9). A copy was not, however, delivered to Bowen until March 20, 2011, several months later. (Doc. 2-1, at 18; Doc. 7-1, at 9). By that time, Bowen had been transferred to another institution, FDC Houston, located in Houston, Texas. (*See* Doc. 2-1, at 8–15). In the interim, Bowen had attempted to appeal the disciplinary hearing officer's findings and sanction, but his administrative appeals were rejected by the regional and central offices as untimely and for failure to attach a copy of the DHO report, which he had not yet received. (Doc. 2-1, at 8–13).

Bowen disputes the factual account provided by the UDC and DHO reports. Bowen claims that, when interviewed at his cell door by UDC member Fontnoet, he expressly requested a witness to testify in his defense—his cellmate, Keith Styers. (Doc. 2, at 2). Bowen further alleges that, on an unspecified date prior to his October 11, 2010, hearing before DHO Epplin-Deville, he met with another DHO, "Mr. White." (*Id.*). Bowen claims that he expressly requested that White hear testimony by his cellmate, advising White that Styers would testify that the alcohol wasn't

in Bowen's locker, but was secreted in a "pooper scooper" next to a toilet in the cell's common area, and that it belonged to Styers, not Bowen. (*Id.*). Bowen claims that White postponed Bowen's disciplinary hearing to interview the witness. (*Id.*). In support, Bowen has submitted a written statement signed by Styers attesting that, immediately before the "shake down" search, Styers had placed a bottle labeled "Brisk Tea" containing "alleged intoxicants" in the pooper scooper next to the toilet, that it had never been in Bowen's locker, and that it belonged to Styers, not Bowen. (Doc. 2-1, at 29).

Bowen filed the instant federal habeas petition, together with a supporting memorandum, on January 14, 2014. (Doc. 1; Doc. 2; Doc. 2-1). The respondent filed his answer to the petition, together with a supporting declaration and exhibits, on February 5, 2014. (Doc. 7; Doc. 7-1). Bowen filed a reply to the answer on March 17, 2014. (Doc. 10). The matter is ripe for decision.

## II. DISCUSSION

### A. Administrative Exhaustion

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus

pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required because:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

*Id.* at 761–62. Proper exhaustion requires that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

Under the BOP's administrative remedy program, the first level appeal from a DHO report is an appeal to the Regional Director. 28 C.F.R. § 542.14(d)(2); *see also id.* § 541.8(i). An inmate may appeal a DHO report by submitting the appropriate form, together with a copy of the DHO report, to the Regional Director within twenty calendar days from the date when the DHO report was signed. *See id.* § 542.15(a) & (b)(1); *see also id.* § 542.14(d)(2). An inmate who is not satisfied with the Regional Director's response may further appeal by submitting the appropriate form to the General Counsel at BOP's central office within thirty calendar days from the date when the Regional Director signed the response. *Id.* § 542.15(a).

This appeal to the General Counsel is the final step in the administrative appeals process for disciplinary decisions. *See id.* § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal.").

Failure to satisfy the procedural rules of the BOP's administrative remedy program constitutes a procedural default. *Moscato*, 98 F.3d at 760. "[I]f a prisoner has failed to exhaust his administrative remedies due to a procedural default and the default renders unavailable the administrative process, review of his habeas claim is barred unless he can demonstrate cause and prejudice." *Id.* at 761. To demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with [a] procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, to demonstrate "actual prejudice," the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantive disadvantage." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 270 (1982)).

In this case, the DHO report was signed on October 12, 2010. (Doc. 2-1, at 18; Doc. 7-1, at 9). But Bowen did not receive a copy of the DHO report until March 20, 2011, several months *after* the deadline for

- 8 -

administrative appeal had expired. (Doc. 2-1, at 18; Doc. 7-1, at 9). In the interim, he had attempted to appeal, but his appeals to the Regional and Central Offices were rejected for failure to include a copy of the DHO report from which he took the appeal. (Doc. 2-1, at 10, 13). Under these circumstances, recognizing that Bowen can arguably demonstrate cause and prejudice to excuse the procedural default of his claims, the respondent has expressly declined to assert procedural default as an affirmative defense. (*See* Doc. 7, at 9 n.1).

Accordingly, we proceed to the merits of Bowen's claims.

**B. Sixth Amendment Compulsory Process Claim**

Bowen claims that the DHO's failure to call his cellmate as a witness in his defense violated his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor." *See* U.S. Const. amend. VI. But a prisoner has no Sixth Amendment right to compulsory process in prison disciplinary proceedings, as the Sixth Amendment is limited to criminal prosecutions and prison disciplinary proceedings are not criminal prosecutions. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.");

*White v. Wyrick*, 727 F.2d 757, 758 (8th Cir. 1984) (no federal constitutional right to compulsory process in prison disciplinary proceedings); *Marino v. Watts*, No. 9:12-CV-801, 2014 WL 1794588, at *9 (N.D.N.Y. May 6, 2014) (no Sixth Amendment right to compulsory process in prison disciplinary proceedings); *Chadwick v. Maddox*, Civil Action No. RDB-09-3329, 2010 WL 1924463, at *2 n.1 (D. Md. May 11, 2010) (same); *Gebbia v. Holt*, Civil No. 4:06-CV-2171, 2007 WL 1893721, at *7 (M.D. Pa. July 2, 2007) ("Prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment."). Accordingly, Bowen's Sixth Amendment compulsory process claim is without merit.

### C. Bowen's Eighth Amendment Claim

Bowen claims that the disciplinary sanctions imposed against him—30 days of disciplinary segregation and the disallowance of 27 days of good conduct time—violated his Eighth Amendment right against cruel and unusual punishment. "The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). The denial of good conduct time as a disciplinary sanction does not violate the Eighth Amendment. *See Hanvey v. Pinto*, 441

F.2d 1154, 1155 (3d Cir. 1971) (per curiam); *Giba v. Cook*, 232 F. Supp. 2d 1171, 1186 (D. Or. 2002). Nor does mere placement in disciplinary segregation, though the conditions in segregation can violate the Eighth Amendment if they fall below certain standards. *Jordan v. Arnold*, 408 F. Supp. 869, 875 (M.D. Pa. 1976). To prove a violation of the Eighth Amendment, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). This includes proof that the deprivation suffered was sufficiently serious and that a prison official acted with deliberate indifference in subjecting him to that deprivation. *Young*, 960 F.2d at 360–61.

Here, Bowen has failed to allege that, while he was confined in disciplinary custody, he was denied "basic human needs, such as food, clothing, shelter, sanitation, medical care [or] personal safety." *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997); *see also McGrath v. Johnson*, 67 F. Supp. 2d 499, 513 (E.D. Pa. 1999). In the absence of any allegation of a deprivation of basic human needs, Bowen has failed to state an Eighth Amendment claim. *See Griffin*, 112 F.3d at 709; *McGrath*, 67 F. Supp. 2d at 514. Accordingly, Bowen's Eighth Amendment claim is without merit.

### D. Bowen's Fifth Amendment Due Process Claims

Bowen claims that he was deprived of his due process rights by prison disciplinary proceedings that were based on a falsified incident report and a falsified DHO report, by the DHO's refusal to call his cellmate to testify as a witness in his defense, and by the failure to timely deliver a copy of the DHO report to him, which in turn prevented him from perfecting an administrative appeal of the disciplinary findings and sanctions. As a result of these alleged due process violations, Bowen claims that he was sanctioned with the disallowance of good conduct time.

A federal prisoner has a constitutionally protected liberty interest in good time credit. *Wolff*, 418 U.S. at 556–57; *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991); *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1417 (M.D. Pa. 1994). But "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556; *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992); *Von Kahl*, 855 F. Supp. at 1417–18. Rather, in the context of a prison disciplinary hearing that may result in the loss of good time credits, due process requires that an inmate must receive: (1) written notice of the charges at least 24 hours prior to the

hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) an opportunity to receive assistance from a staff representative or a fellow inmate if the charged inmate is illiterate or if complex issues are involved; and (4) a written decision by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563–70; *Griffin*, 969 F.2d at 19; *Von Kahl*, 855 F. Supp. at 1418. In addition, due process requires that a prison disciplinary decision implicating an inmate's liberty interest must be supported by at least "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985); *Elkin v. Fauver*, 969 F.2d 48, 51 (3d Cir. 1992); *Griffin*, 969 F.2d at 19; *Von Kahl*, 855 F. Supp. at 1418.

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [factfinder].

*Hill*, 472 U.S. at 455–56.

Here, Bowen does not dispute that he received timely written notice of the charges against him, that he declined the opportunity for the assistance of a staff representative, and that he received a written decision

from the DHO—albeit belatedly—describing the evidence relied upon and clearly stating the DHO's factual findings and her reasons for imposing disciplinary sanctions.[2] Bowen's challenge is based on the alleged denial of his right to call witnesses in his defense and on the arbitrariness of a disciplinary decision based on allegedly insufficient evidence.

With respect to the alleged denial of Bowen's right to call witnesses in his defense, even assuming the truth of his claim that he requested that his cellmate, Keith Styers, be called to testify in his favor, Bowen was not prejudiced by the absence of his cellmate's testimony. Bowen was charged with possession of intoxicants based upon the recovery from his locker of *two* bottles containing intoxicants. Based on his written statement, Styers would have testified only that *one* of the two bottles confiscated by Lieutenant Melton (a "Brisk Tea" bottle) had been located in the cell's common area rather than Bowen's locker. The bottle's presence in a common area, accessible to Bowen as well as Styers, is sufficient to

---

[2] Bowen suggests that prison officials prevented him from appealing the disciplinary decision by delaying delivery of the written DHO report, but the respondent has declined to assert a procedural default defense based on Bowen's failure to exhaust administrative remedies, and there is no constitutional right to administrative review of prison disciplinary proceedings. *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983).

support a finding that Bowen possessed the Brisk Tea bottle. *See Denny v. Schultz*, 708 F.3d 140, 147 (3d Cir. 2013). Moreover, Bowen does not dispute that the second bottle confiscated by Lieutenant Melton (a VO5 shampoo bottle) belonged to Bowen and had been kept in his locker. *See Pachtinger v. Grondolsky*, 340 Fed. App'x 774, 776–77 (3d Cir. 2009) (per curiam) (no due process violation because inmate was not prejudiced by the absence of his cellmate's testimony that, if accepted as true, would not negate the charged conduct)

What remains then is Bowen's general challenge to the sufficiency of the evidence upon which the DHO relied. Bowen contends that Lieutenant Melton's written statement in the incident report, reporting the recovery of two bottles from Bowen's locker containing intoxicants, is false. Bowen notes that Melton's incident report is contradicted by the written statement later provided by his cellmate, and he suggests that Melton's report of testing results is intrinsically not credible. But under the *Hill* "some evidence" standard, this Court is not permitted to independently assess witness credibility or re-weigh the evidence; rather, the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the [DHO]." *See Hill*, 472 U.S. at 455–56.

Notwithstanding the fact that his account conflicts with those of Bowen and Styers, the DHO could have reasonably found Melton's statement to be credible, particularly given its specificity. *Cf. Pappas v. Allenwood USP*, 548 Fed. App'x 31, 33 (3d Cir. 2013) (per curiam). Having found Melton's written statement credible, the disciplinary decision was clearly supported by at least "some evidence" in the record. *See id.*

Accordingly, Bowen's habeas challenge to these disciplinary proceedings and the related sanctions must be denied because there is "evidence in the record that could support the conclusion reached by the [DHO]." *See Hill*, 472 U.S. at 455–56.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition (Doc. 1) be **DENIED**.

Dated: May 20, 2016            ***s/ Joseph F. Saporito, Jr.***
                                                     JOSEPH F. SAPORITO, JR.
                                                     United States Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN ASHLEY BOWEN,<br><br>   Petitioner,<br><br>   v.<br><br>J.E. THOMAS, Warden,<br><br>   Respondent. | CIVIL ACTION NO. 1:14-cv-00037<br><br>(RAMBO, J.)<br>(SAPORITO, M.J.) |

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated May 20, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

- 2 -

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: May 20, 2016                      ***s/ Joseph F. Saporito, Jr***.
                                     JOSEPH F. SAPORITO, JR.
                                     United States Magistrate Judge